John C. GETREU, Regional Director of Region 9 of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Plaintiff,

v.

**LOCAL UNION NO. 98 OF the SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION** and its Agents, Malcolm Hamilton, Jr., and Lincoln Baird, Respondents.

Civ. A. 68–114.

United States District Court
S. D. Ohio, E. D.

Oct. 10, 1968.

As Amended Oct. 22, 1968.

Jack V. Baker, Atty., N. L. R. B., Cincinnati, Ohio, for Gen. Counsel for the N. L. R. B.

Arnold Morelli, Cincinnati, Ohio, for Cincinnati Sheet Metal.

Mortimer Riemer, Cleveland, Ohio, for respondents.

## ORDER FOR PRELIMINARY INJUNCTION

KINNEARY, District Judge.

This petition for a preliminary injunction pursuant to Section 10(l) of the National Labor Relations Act (herein the Act) Title 29, United States Code, Section 160(l) presents the question whether there is reasonable cause to believe that the respondent, Local Union No. 98 of the Sheet Metal Workers' International Association and its Agents, Malcolm Hamilton, Jr. and Lincoln Baird (herein Local 98) has engaged in, and is engaging in, "unfair labor practices," as that term is defined in the Act.

The Regional Director of the Ninth Region of the National Labor Relations Board (herein the Board), acting pursuant to Section 10(l) of the Act, has filed a petition for a temporary injunction pending the final adjudication of the Board with respect to the matters involved herein now before the Board on charges filed by the Cincinnati Sheet Metal & Roofing Company (herein Cincinnati Sheet Metal). The charges allege that Local 98 has engaged in, and is engaging in, acts and conduct in violation of Sections 8(e) and 8(b) (4) (i) and (ii), subparagraph (B) of the Act. These sections provide:

*Section 8(e)*

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: Provided, that nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: * * *

*Section 8(b)*

It shall be an unfair labor practice for a labor organization or its agents—

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(A) forcing or requiring any employer * * * to enter into any agreement which is prohibited by Section 8(e);

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other produc-

er, processor or manufacturer, or to cease doing business with any other person * * *

The petition is predicated on petitioner's conclusion that there is reasonable cause to believe that Local 98 has engaged in the unfair labor practices charged and that a complaint of the Board based on the charges should issue.

The hearing on the petition was brought by an order to show cause and an evidentiary hearing was held thereon.

The Court herein grants the requested relief. The findings of fact and the conclusions of law which constitute the grounds of the Court's action and the reasons for the issuance of the preliminary injunction are set forth in this Order. Rules 52(a) and 65(d), Federal Rules of Civil Procedure.

### Findings of Fact

1. Petitioner is Regional Director of the Ninth Region of the Board, an agency of the United States. He has filed the petition herein for and on behalf of the Board.

2. On August 7, 1967, Cincinnati Sheet Metal, pursuant to provisions of the Act, filed charges with the Board alleging that respondent, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(e) and 8(b) (4) (i), (ii) subparagraph (B), of the Act.

3. The charges filed by Cincinnati Sheet Metal were referred to petitioner as Regional Director of the Ninth Region of the Board.

4. There is, and petitioner has reasonable cause to believe that:

(a) Local 98, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) Local 98 maintains its principal office at Columbus, Ohio, and at all times material herein, it has been engaged in this judicial district in transacting business and in promoting and protecting the interests of its members.

(c) At all times material herein, respondent Hamilton has been the business agent and respondent Baird has been the business manager of Local 98, and each has been an agent of Local 98 within the meaning of the Act.

(d) Cincinnati Sheet Metal is engaged at Cincinnati, Ohio, in the fabrication and distribution of roofing, rain carrying goods, piping and other sheet metal products, and in such business annually receives goods and materials from points outside the State of Ohio of a value in excess of $50,000.00.

(e) Standard Sheet Metal, Inc. (herein Standard) and C. S. Veach, Inc. (herein Veach) are each engaged in the States of Ohio and Kentucky as sheet metal contractors in the building and construction industry, and Local 98 is the collective bargaining representative of their employees.

(f) In the course of their businesses, Standard and Veach regularly purchase materials and products fabricated and distributed and/or sold by Cincinnati Sheet Metal, Buckeye Furnace and Fittings Company (herein Buckeye) and other employers for installation and use at various construction sites.

(g) At all times material herein, Standard has been engaged in the installation of sheet metal piping and fittings at construction projects at Portsmouth, Ohio, including the Portsmouth Welfare Building and an automatic car wash, and Veach has been engaged in the installation of sheet metal piping and fittings at a construction project located at Ralston-Purina's processing plant at Wellston, Ohio.

(h) Since about April 6, 1967, respondents have ordered, instructed, requested and appealed to individuals employed by Standard and Veach to refuse to install adjustable elbows, round pipe and ducts manufactured and/or fabricated by Cincinnati Sheet Metal and

Buckeye for installation by these contractors at said projects.

(i) As a result of the aforesaid acts and conduct, individuals employed by Standard and Veach refused to install said pipe and fittings manufactured and/or fabricated by Cincinnati Sheet Metal and Buckeye.

(j) By the acts and conduct aforesaid, respondents have engaged in, and have induced and encouraged individuals employed by Standard and Veach, to engage in strikes or refusals, in the course of their employment, to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials or commodities or to perform services, and have threatened, coerced and restrained Standard and Veach and other persons engaged in commerce or in industries affecting commerce.

(k) An object of the aforesaid acts and conduct was and is to force or require Standard and Veach, and other persons, to cease using, handling, transporting, or otherwise dealing in the products of, and to cease doing business with, Cincinnati Sheet Metal and Buckeye.

(l) On or about June 1, 1967, Local 98 entered into a written contract with Sheet Metal Contractors of Southern Ohio, a. k. a. Union Sheet Metal Contractors, an association of sheet metal contractors of which Standard is a member. Local 98 also entered into an identical contract with Veach, who is a non-member of said association which contract contained the following clauses:

## ARTICLE II

Section 2: Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

## ARTICLE VIII

Section 3: Notwithstanding the provisions of Section 2 of this Article and Section 2 of Article II, the following items may be manufactured for sale to the trade or purchased at the rates specified below:

1. High pressure pipe and fittings (local building and construction wage rates)
2. Ventilators (production wage rates)
3. Louvers (production wage rates)
4. Automatic dampers (production wage rates)
5. Radiator and air conditioning unit enclosures (production wage rates)
6. Fabricated pipe and fittings for residential installations only (production wage rate)
7. Mixing (attenuation) boxes (production wage rates)
8. Plastic skylights (production rates)
9. Kitchen equipment (industrial rates)
10. Air diffusers, grille registers (production wage rate)
11. Sound attenuators (traps) (production wage rate)

(m) Standard and other members of Union Sheet Metal Contractors Association, Veach and Local 98 are continuing to maintain and give effect to the aforesaid contract clauses.

(n) Pursuant to said clauses, as interpreted and applied by respondents, Standard and Veach have ceased or refrained, and have agreed to cease and refrain, from handling, using, selling, transporting or otherwise dealing in the products of Cincinnati Sheet Metal and Buckeye or other employers or from doing business with other persons.

(o) By entering into the aforesaid contract, Local 98 has entered into an agreement, express or implied, whereby employers cease or refrain, or agree to cease or refrain, from handling, using, selling, transporting, or otherwise deal-

ing in products of other employers, or to cease doing business with other persons.

5. It is a reasonable probability and it may fairly be anticipated that, unless enjoined, respondents will continue and repeat and threaten to continue and repeat the aforesaid acts and conduct and similar acts and conduct, and will continue to interpret, apply and give effect to the aforesaid contract clauses.

### Reasons

The petitioner contends that the result and effect of respondents' acts and conduct and the contract provisions is a secondary boycott; i. e., a boycott whose " 'sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it.' International Brotherhood of Electrical Workers, Local 501 v. N. L. R. B., 2 Cir., 181 F.2d 34, 37, aff'd., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299." Local 761, International Union of Electrical, Radio and Machine Workers v. N. L. R. B., 366 U.S. 667, 672, 81 S.Ct. 1285, 1289, 6 L.Ed.2d 592 (1961). Petitioner argues that by its acts and conduct Local 98 and its agents have caused employees of Standard and Veach to refuse to install round pipe and adjustable elbows unless these items are purchased from a manufacturer who pays the construction rate. Petitioner further contends that the employees of Standard and Veach received no direct benefit from this compulsion, but that the benefits ran to other members of the Union working for other employers causing the "sanctions" to "bear" upon a third party. Finally, while the petitioner recognizes that, if the object of respondent's activity were to preserve work for the employees of Standard and Veach or to recapture work traditionally done by those employees, then such conduct would not violate the Act. On the other hand, the petitioner contends that the object of such acts and conduct and the contract provisions are not designed for that purpose but rather to benefit persons other than Standard and Veach employees including the employees of United Sheet Metal of Columbus.

Respondents contend that the contract clauses have the lawful object of preserving or reacquiring work for the unit employees which they can do and/or have done. Respondents further contend that the "unit" is the employer-wide collective bargaining unit, not just the employees of Standard and Veach, and therefore, that the benefit was primary, and not secondary, as argued by petitioner.

The Court finds that the contentions which are supported by the preponderance of the credible evidence produced at the hearing are those of the petitioner.

■ Whether or not the contract clauses involved and union conduct found above violates the Act can only be determined after examination of the object of such clauses and/or conduct. If the contract clauses and the resultant conduct had as their object the preservation or protection of work traditionally and customarily performed by employees in the bargaining unit, they may be held harmless; but if such contract clauses and resultant conduct were designed to accomplish other union objectives, they are proscribed by the Act. National Woodwork Mfg.'s Assoc. v. N. L. R. B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).

*National Woodwork* is recognized by all the parties herein to be decisive of this matter. In that case, the carpenters had a contract with the Frouge Corporation which provided that they would not handle doors which had been fitted prior to being furnished on the job. Frouge purchased and sought union installation of doors premachined by National Woodwork. The union ordered its members to refuse to handle the doors. Frouge withdrew the premachined doors and substituted doors satisfactory to the union. The question presented was whether the union had committed an unfair labor practice under Section 8(e) by entering into an agreement "* * * whereby such employer * * * agrees to cease or refrain from handling * * * any of the products of any other em-

ployer * * *" A majority of the Supreme Court held that the union had not done so because it was preserving work which had been traditionally that of the union members. Mr. Justice Brennan, speaking for four members of the Court, stated:

> The determination whether the "will not handle" sentence of Rule 17 and its enforcement violated § 8(e) and § 8(b) (4) (B) cannot be made without an inquiry into whether, under all the surrounding circumstances, the Union's objective was preservation of work for Frouge's employees, or whether the agreements and boycott were tactically calculated to satisfy union objectives elsewhere. Were the latter the case, Frouge, the boycotting employer, would be a neutral bystander, and the agreement or boycott would, within the intent of Congress, become secondary. There need not be an actual dispute with the boycotted employer, here the door manufacturer, for the activity to fall within this category, so long as the tactical object of the agreement and its maintenance is that employer, or benefits to other than the boycotting employees or other employees of the primary employer thus making the agreement or boycott secondary in its aim. The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-à-vis his own employees.

The concurring opinion by Mr. Justice Harlan stated:

> The facts as found by the Board and the Court of Appeals show that the contractual restrictive-product rule in question, and the boycott in support of its enforcement, had as their sole objective the protection of union members from a diminution of work flowing from changes in technology. Union members traditionally had performed the task of fitting doors on the job site, and there is no evidence of any motive for this contract provision and its companion boycott other than the preservation of that work.

This, then, is not a case of a union seeking to restrict by contract or boycott an employer with respect to the products he uses, for the purpose of acquiring for its members work that had not previously been theirs.

As applied to the facts of this case, *National Woodwork* requires two things be shown in order to sustain respondent's position.

1. Local 98's refusal to handle the products of Cincinnati Sheet Metal and Buckeye must be directed at affecting the labor relations of Standard and Veach and their employees.

2. Local 98's objective must be to preserve work traditionally performed by the employees of Standard and Veach.

■■ The record in this case amply demonstrates that the object of the relevant contract provisions could not have been work preservation, for the record demonstrates that the round pipe and adjustable elbows were traditionally purchased by Standard and Veach and not fabricated on the job site by their employees. The fact that round pipe and adjustable elbows purchased from United Sheet Metal were accepted by the union refutes the contention that work preservation for the employees was the object rather than a mere consequence. The contract is therefore within the proscription of Section 8(e). Similarly the record demonstrates that the refusal to handle the goods of Cincinnati Sheet Metal and Buckeye was not intended to benefit the employees in a dispute with their employer but was activity within the proscription of Section 8(b) (4) (i) and (ii), subparagraph (B), being in the nature of a secondary boycott.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this action. Under Section 10(*l*) of the Act, this Court is empowered to grant injunctive relief.

2. Petitioner has shown sufficient ground for the issuance of an injunction under Section 10(*l*).

3. There is, and petitioner has reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act.

(b) Cincinnati Sheet Metal is an employer engaged in interstate commerce within the meaning of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Sections 8(e) and 8(b) (4) (i), (ii), subparagraph (B), of the act; and a continuation of these practices by respondent will impair the policies of the Act as set forth in Section 1(b) thereof.

## ORDER

In order to preserve the issue for orderly determination by the Board as provided in the National Labor Relations Act, the Court hereby orders that, pending the final disposition of the issues herein involved and now before the National Labor Relations Board, Local Union No. 98 of the Sheet Metal Worker's International Association, its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, should be, and they are hereby, enjoined and restrained from:

1. Ordering, instructing, requesting and/or appealing to individuals employed by Standard Sheet Metal, Inc. and C. S. Veach, Inc., to refuse to install adjustable elbows, round pipe and ducts manufactured and/or fabricated by Cincinnati Sheet Metal & Roofing Company and Buckeye Furnace and Fittings Company for installation by Standard Sheet Metal, Inc. and C. S. Veach, Inc.

2. Causing, as a result of orders, instructions, requests, and/or appeals, by the persons hereby enjoined and restrained, individuals employed by Standard Sheet Metal, Inc. and C. S. Veach, Inc., to refuse to install adjustable elbows, round pipe, ducts and fittings manufactured and/or fabricated by Cincinnati Sheet Metal & Roofing Company and Buckeye Furnace and Fittings Company.

3. Inducing and/or encouraging individuals employed by Standard Sheet Metal, Inc. and C. S. Veach, Inc. to engage in strikes, or refusals in the course of their employment, to use, manufacture, process, transport or otherwise handle or work on goods, articles, materials or commodities or to perform services, and threaten, coerce, and/or restrain Standard Sheet Metal, Inc. and C. S. Veach, Inc. and other persons engaged in commerce or industry affecting commerce; and

4. Forcing or requiring Standard Sheet Metal, Inc. and C. S. Veach, Inc., and other persons, by means of the acts and conduct specified in the three preceding paragraphs of this Order to cease using, handling, transporting, or otherwise dealing in the products of, and to cease doing business with Cincinnati Sheet Metal & Roofing Company and Buckeye Furnace and Fittings Company.

and the same are hereby enjoined, pending the final disposition of the issues before the National Labor Relations Board, from maintaining, giving effect to, and enforcing the contract provisions referred to in the Findings of Fact 4(m), 4(n) and 4(o) herein, and from entering into, maintaining or giving effect to any other contract or agreement whereby Standard Sheet Metal, Inc. or C. S. Veach, Inc., or any other person, ceases or refrains, agrees to cease or refrain from handling, using, selling or otherwise dealing in any of the products of Cincinnati Sheet Metal & Roofing Company, Buckeye Furnace and Fittings Company, or any other employer, or from doing business with Cincinnati Sheet Metal & Roofing Company, Buckeye Furnace and Fittings Company, or any other persons.